Cueia, per
Nott, J.
It is contended in this case, that as the arbitrators were judges of the parties’ own choosing, the Court ought not to set aside their award except for fraud, corruption, partiality, or gross misconduct.
The cases on this subject are certainly very strong; and it cannot be expected, that when the parties have thus withdrawn their cause from the ordinary tribunals of justice, that the same .regularity should be observed as *482 would be required in a Court whose proceedings are governed by fixed and determinate rules.
The parties themselves, by selecting their own judges, are understood to dispense with that degree of formality; and the very object of referring cases to arbitration is, in most cases, to be absolved from those fetters which the technical rules of Court impose upon their proceedings. But there are nevertheless certain limits, beyond which even arbitrators are not permitted to dispense with the rules of law. There are certain fundamental rules for the trial of causes, the disregard of which by any tribunal, however organized, will render their proceedings null and void. Among these are, the right of the party to have notice of the time and place of trial; to have an opportunity to produce his testimony; to know and to have an opportunity to rebut the testimony offered against him. However, the law is so well settled upon this subject, that I will barely refer to the decided cases, and shall be satisfied to be governed by the conclusion which is to be drawn from them. In the case of Fitzpatrick v. Smith, 1 Desaus. Rep. 345, the Chancellor, who delivered the decree of the Court, observed that as there was no charge of fraud or partiality on the part of the arbitrators, the award was conclusive. In the case of Brown v. Brown, 1 Vern. 157, the Lord Keeper dismissed a bill to set aside an award, because he did not see any fraud or collusion in the matter. Other cases are relied on where similar expressions are used, from whence it is inferred that these are the only grounds on which an award will be set aside. But upon examining those authorities it will be found that there is usually some alternation annexed. Thus in the case of Aylwin v. Perkins, 3 Desaus. Rep. 305, it is said, the award is binding on the defendant, unless he can shew corruption, partiality, or gross misconduct on the part of the arbitrators; or unless the arbitrators were *483 mistaken in aplaip point of law; or unless there were such gross and palpable mistakes in calculation as produced manifest injustice. So in the case of Brown v. Brown, above quoted, the Lord Keeper added, if their accounts prove a manifest error in the body of an award, relief may be had. In 3 Atk. Rep. 644, an anonymous case, though Lord Haedwicke said, unless there is corruption or partiality in an arbitrator, the party cannot set aside his award; yet he added, if there was any palpable mistake made by the arbitrator, or miscalculation in an account laid before him, the party aggrieved might bring his bill to have it rectified. In the case of Ridout v. Pain, 3 Atk. Rep. 494, the same learned Judge refers to the case of Comforth v. Green, where Lord Cowpee lays it down, that if arbitrators go upon a plain mistake, either in law or fact, Equity will relieve against the award; and remarks, “ in the case of Medcalf v. Ives I was of the same opinion.” It appears then that there are cases falling very short of fraud or corruption, in which an award may be set aside. But the cases go even further.
In the case of Morris v. Reynolds, 2 Lord Raym. 857, a motion was made to set aside an award on the ground, that the arbitrators had refused to hear what the defendant could say after they bad heard the plaintiff. Holt, Chief Justice, opposed this totis viribus, as contrary to all his experience. He said, the integrity of the arbitrators, in such cases, whom .the parties by consent had chosen for their judges, should never be arraigned any more than the integrity of any other Judges; but Powell, Powys and Gould, Justices, said “it was abominable to give countenance to any such proceedings and they suffered the award to be examined into. The same doctrine is laid down in Metcalf v. Ives, 1 Atk. 64. The Lord Chancellor says, when the arbitrators make their award clandestinely, without hear-; *484 ing each party, the Court ought to interfere to avoid such an award. In the case of Morgan v. Mather, 2 Ves. Jun. 16, 17, not hearing a witness, even though there be no corrUptjon, js expressly stated as a ground for setting aside an award. In the case of Walker v. Frobisher, 6 Ves. 70, where the arbitrator examined witnesses on one side without the knowledge of the other party, after he had informed the parties that he would hear no other testimony, the Chancellor set aside the award; although the arbitrator swore he had previously made up his mind, and that this testimony had no influence on his judgment in making up his award. The Lord Chancellor said he believed him, because he knew him to be a most excellent man. But he could not, from respect for any man, do that which he could not reconcile to general principles. A Judge must not, said his Lordship, take upon himself to say whether evidence, improperly admitted, had or had not an effect upon his mind. And that although the award might do perfect justice, upon general principles it could not be supported. Now, what are the facts in this easel In the course of the investigation the defendant discovered that he should want more testimony than he had adduced. He requested further time for that purpose, which was granted. He must have expected that the testimony, which he was about to obtain, would have an important influence on the result of the case, otherwise he would have been indifferent about it. And it was equally important to the complainant as to the defendant; for their interests were equally involved in the issue. They ought therefore to have had an opportunity of cross-examining the witnesses whose testimony was to be taken, and notice of the time and place of hearing the case, that they might have had an opportunity of rebutting the testimony. The case comes precisely within the principles of the case of Walker v. Frobisher, and se *485 veral of the other cases which have been relied on. For, whether ex parte testimony be received after the arbitrators had agreed to close the examination, or during its progress, the principle is precisély the same. When it is said, that partiality on the part of the arbitrators is a good ground for setting aside an award, it is not to be understood that it must necessarily be a corrupt partía-lity. Any ex parte proceeding, the effect of which is to give an advantage to one party over the other, is such a partiality as will avoid an award. Suppose the witnesses had been examined viva voce, ought not the complainants to have had notice of the time and place of meeting, that they might have heard the evidence. And in principle, there is no difference whether the evidence be ore terns, or in writing. There is no allegation of corruption or fraud against either the defendant or arbitrators. It is admitted that they are all gentlemen of high respectability, whose characters raise them above any suspicion of that sort. But they have mistaken their duty in hearing evidence on one side without giving the other party an opportunity of being heard. Their award therefore cannot be supported. It is the opinion of the Court, that that part of the decree which goes to set aside the award must be affirmed, and that the defendant must pay the costs. But that is as far as the decree ought to have gone. The only relief which the coipplainants have asked and to which they are entitled is, that the award should be set aside. They then have a plain and adequate remedy at law. At least there is nothing brought to the view of the Court, by which it can be seen that they have not. By their original agreement it was stipulated, that if any difference should arise between them it should be settled by arbitration, and there can be no reason why the Court of Equity should take the case from the tribunal selected by the parties themselves. That part of the decree, therefore, *486 which directs that the bill should be retained for further hearing is reversed.
Partiality up-°"t award need yupt parüaii-
*486 It is therefore ordered and decreed, that so much of ¿ecree 0f the Chancellor as goes to set aside the award in this case be affirmed ; but that so much of the decree as directs that the case be set down for trial in that Court on its merits be reversed, and that the cause be struck from the docket, the Court seeing no cause for further relief.

Decree modified.